**Edward G. GARLAND, Appellant,**

**v.**

**J. D. COX, Superintendent Virginia State Penitentiary, Appellee.**

**No. 14820.**

United States Court of Appeals, Fourth Circuit.

Argued Sept. 15, 1972.

Decided Jan. 16, 1973.

Edward L. Hogshire, Washington, D. C., for appellant.

William A. Carter, III, Asst. Atty. Gen. (Andrew P. Miller, Atty. Gen., William P. Robinson, Jr., Asst. Atty. Gen., on brief), for appellee.

Before SOBELOFF, Senior Circuit Judge, WINTER, Circuit Judge, and THOMSEN, Senior District Judge.

SOBELOFF, Senior Circuit Judge:

Edward G. Garland, a Virginia prisoner, seeks a certificate of probable cause to appeal from an order of the District Court, 311 F.Supp. 1290, dismissing his petition for a writ of habeas corpus. We grant the certificate, and reverse.

It is uncontested that counsel was not appointed to represent Garland until the day of his trial. In the past, we have held that such late appointment of counsel is inherently prejudicial, and "constitutes a prima facie case of denial of effective assistance of counsel, so that the burden of proving lack of prejudice is shifted to the state." Twiford v. Peyton, 372 F.2d 670, 673 (4 Cir. 1967). Stokes v. Peyton, 437 F.2d 131 (4 Cir. 1970); Fields v. Peyton, 375 F.2d 624 (4 Cir. 1970). The State of Virginia, however, urges this court to retreat from this rule of presumptive prejudice wherever there has been a showing of late appointment of counsel, and to look instead to the "totality of the circumstances." See Moore v. United States, 432 F.2d 730 (3 Cir. 1970); Rastrom v. Robbins, 440 F.2d 1251 (1 Cir. 1971). The state also contends that Garland unreasonably and unjustifiably delayed raising his claim of ineffective representation of counsel to its material prejudice, and that under such circumstances the doctrine shifting the burden of proof of prejudice to the state should not be applied.

## I.

Garland appeared for trial on November 14, 1955, in the Circuit Court of the City of Waynesboro, Virginia, charged with six counts of forgery. Counsel was then appointed and conferred with the defendant for fifteen to twenty minutes. He advised Garland to plead not guilty to one count, guilty to the other five, and to waive his right to a jury trial; all of which the defendant did. As a consequence, Garland was convicted of five counts of forgery on his guilty pleas and sentenced to five consecutive two-year terms of imprisonment.

Petitioner fully served the sentences imposed on him for the forgery convictions, which, together with two other convictions not now in issue, formed the basis of a 1963 recidivist conviction—the cause of his present confinement. He was sentenced to ten years' imprisonment, nine of which were suspended.

After being discharged from prison in 1964, Garland was convicted of yet another charge in 1965, and the suspension of nine years on the recidivist conviction was revoked. On May 28, 1968, he filed a petition for a writ of habeas corpus in the Circuit Court for the City of Waynesboro, attacking the 1955 forgery convictions, alleging ineffective assistance from his counsel due to the attorney's appointment on the day of trial. Subsequently, in August, 1968, prior to the initial habeas hearing, the counsel who had represented Garland in 1955 died at the age of forty-nine, thus rendering it an impossible task to detail the attorney's participation. After exhausting all state remedies, Garland filed a federal petition for a writ of habeas corpus on March 6, 1970.

The District Court, per Judge Dalton, while recognizing the applicability of *Twiford* and *Fields*, nonetheless dismissed the petition, stating:

An unreasonable and unjustified delay by a petitioner in making a claim may not be used to the disadvantage of the state. See Wade v. Peyton, 378 F.2d 50 (4 Cir. 1967). The present claim was not presented until almost 15 years after the conviction, and after the death of petitioner's counsel. It is clear that the state has been prejudiced with regard to petitioner's delay in making this claim—

its chance for effective rebuttal evidence died with petitioner's counsel.

All parties agree that the lower court's reliance on Wade v. Peyton was misplaced as that case was decided on the issue of exhaustion. See Appellee's Brief at p. 4. Nevertheless, the state argues that Garland unreasonably delayed for thirteen years raising the issue of late appointment of counsel, and that now as a result of trial counsel's death, it will be unable to rebut the presumption that ineffective assistance of counsel was rendered. Under these limited circumstances, the state contends the burden of persuasion on the issue of prejudice should remain with the defendant.

A careful examination of the chronology and circumstances of this case leads us to the conclusion that Garland did not unreasonably or unjustifiably delay making a claim of ineffective assistance of counsel. The claim was filed three months before trial counsel's untimely death at a young age, forty-nine years. It is this death which the state maintains has foreclosed its ability to prove that Garland was adequately represented at trial.

■ Furthermore, Garland's delay in presenting his claim was reasonable both in light of the fact that his suspended sentence was not revoked until December 22, 1965, and the fact that the decisions in *Twiford* and *Fields*, which can be characterized as changes in the law, were not rendered until February 6, 1967, and March 7, 1967. Garland began habeas proceedings in May, 1968—certainly within a reasonable period following the decisions. The Supreme Court has said that an intervening change of law is sufficient justification for failing to raise a claim, even if the failure to raise the point occurred in a prior habeas hearing. "If purely legal questions are involved, the applicant may be entitled to a new hearing upon showing an intervening change in the law or some other justification for having failed to raise a crucial point or ar-

gument in the prior application." Sanders v. United States, 373 U.S. 1, 17, 83 S.Ct. 1068, 1078, 10 L.Ed.2d 148 (1962).

II.

The state makes a broader attack against the rule prevailing in this circuit that where the record reveals inadequate preparation time due to late appointment of counsel, the burden of proving that the defendant was not thereby prejudiced shifts to the state. The suggestion is proffered that we rethink the *Twiford-Fields* doctrine in light of recent judicial developments. *See* Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); Moore v. United States, 432 F.2d 730 (3 Cir. 1970); Rastrom v. Robbins, 440 F. 2d 1251 (1 Cir. 1971).

Reviewing these decisions we are not inclined to alter the rule we promulgated in *Twiford* and *Fields*. The Supreme Court in Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), left undisturbed a Third Circuit rule similar to the one we follow. In the course of the lengthy opinion, the Court declared:

> Unquestionably, the courts should make every effort to effect early appointments of counsel in all cases. But we are not disposed to fashion a *per se* rule requiring reversal of every conviction following tardy appointment of counsel or to hold that, whenever a habeas petition alleges a belated appointment, an evidentiary hearing must be held to determine whether the defendant has been denied his constitutional right to counsel. 399 U.S. at 54, 90 S.Ct. at 1982.

The language of the Court permits adoption of either a presumption or a totality of the circumstances approach. Certainly this circuit's rule placing upon the state the burden of providing evidence that a defendant was not prejudiced by a tardy appointment of counsel is not at odds with the Supreme Court's stricture in *Chambers*. Establishing a presumption that late appointment results in in-

effective assistance of counsel does not automatically mandate any particular result; nor does it dictate an evidentiary hearing every time late appointment is alleged. The doctrine of *Twiford-Fields* is not "a *per se* rule requiring the reversal of every conviction following the late appointment of counsel." It is an evidentiary rule, affecting the distribution of the burden of persuasion between two parties. *See* McCormick on Evidence, § 343 (2d ed. 1972). *See also* Wigmore on Evidence, §§ 2483, 2485–2487, 2489–2493 (3rd ed. 1940).

Since either approach, presumption of prejudice or totality of the circumstances, is constitutionally acceptable, we must determine which in our view best serves our notions of justice and fair play. In adopting the totality of the circumstances approach, the Third Circuit stated in Moore v. United States, 432 F.2d 730 (3 Cir. 1970) that since late appointments were no longer a problem in the circuit a prophylactic rule was no longer needed. It was preferable, the court declared, to decide on a case by case basis the factual question of whether the defendant received adequate assistance of counsel from the totality of the circumstances. The Third Circuit, however, still retains a presumption—only it is recast into one favoring the state over the defendant. "If it be said that [it] will cast the burden of proof on the defendant, the answer is that [*the totality of the circumstances approach*] *applies to the lawyer the presumption of the regularity of his conduct* and that . . . one who claims his counsel had inadequately represented him should have the burden of proving the charge." *Moore, supra,* at 735. (Emphasis added.) The Third Circuit envisions an inquiry into the ability, experience and zeal with which counsel acted, both at the trial and in preparation—in other words, an evaluation of the services rendered to the client. But this type of inquiry accompanied by the presumption of regularity that is accorded prior judicial proceedings works a hardship on a class of petitioners, such

as Garland, who, through no fault of their own, are prevented from rebutting the presumption established by the Third Circuit. Where counsel and records are no longer available, as in Garland's case, the defendant, as a practical matter, would be foreclosed from challenging the adequacy of the representation received, regardless of shortness of preparation time.

Most recently, the First Circuit also adopted a totality of the circumstances test. Rastrom v. Robbins, 440 F.2d 1251 (1971). In *Rastrom*, Judge Coffin pointed out that *Fields* and *Twiford* both involved evidence of prejudice beyond the mere shortage of preparation time. Thus, he minimized the substantive difference between the approaches of circuits. Any remaining variance in these theories, he wrote, "may best be described as attitudinal," there being "a lower threshold of tolerance toward stringently limited preparation time" in the Fourth Circuit. *Rastrom, supra,* at 1253.

Judge Coffin is correct in observing that in Fourth Circuit late appointment cases other evidence of prejudice existed in addition to mere shortage of preparation time. It is our belief that these other deficiencies of trial counsel are not independent of the circumstance of late appointment of counsel but rather emanations therefrom. In *Twiford*, for example, there were defense witnesses who were not located because of a paucity of time—caused by a late appointment. Just as a pattern of concentric circlets emanates outward from a pebble dropped in a pool of water, a variety of shortcomings seems to radiate from appointment of counsel not made until the day of trial. One is the source of the other. It is this observed relationship between late appointment and ineffective representation upon which our presumption rule is chiefly bottomed.

The most important consideration in the creation of presumptions is probability. McCormick, *supra,* § 343. Evidentiary presumptions exist because the establishment of an intermediate fact

more probably than not establishes the ultimate fact, and the intermediate fact is more capable of proof. McCormick, *supra*. In a situation where the ultimate fact—the question of adequacy of counsel—is difficult to prove, but the intermediate fact—late appointment of counsel—is established, we hold that it is appropriate to presume ineffective assistance of counsel. This presumption is not irrebuttable; it compels the conclusion that ineffective assistance of counsel was rendered only in the absence of evidence to the contrary. As soon as this calculus is altered and the state adduces evidence to the contrary, the presumption disappears as a rule of law. Wigmore, *supra*, § 2491; for "presumptions . . . may be looked on as the bats of the law, flitting in the twilight, but disappearing in the sunshine of actual facts." Stumpf v. Montgomery, 101 Okl. 257, 226 P. 65 (1924).

The primary input of the attorney to his client's case is that of professional expertise. Even in a simple criminal case, meticulous investigation and thoughtful legal analysis will often reveal a panoply of issues—to which the defendant, a layman, will be oblivious. Both our approach and that of the Third and First Circuits require an inquiry into whether counsel has adequately considered the facts of the case and explored the various avenues of defense. Usually the result of the two approaches will coincide. The value of our own rule is in those relatively rare situations where because of passage of time or the unavailability of material witnesses, a defendant can show late appointment and no more. In such cases, it comports with notions of fair play to expect the state, with its greater resources, to bear the burden of demonstrating regularity, especially since a court of the state, not the defendant, produced the unhappy situation by originally making the late appointment.

■ Where a petitioner demonstrates late appointment of counsel, we will continue to employ the presumption of ineffective assistance of counsel, remembering that it is merely a procedural device dictating a particular result only in the absence of contradictory evidence. The moment that contravening evidence is presented from any source, the presumption vanishes completely—as if it had never existed. Our continued adherence to a rule of presumption of prejudice avoids potential injustice in a case such as the one before us today. Garland's attorney is dead, and all concede that it is now impossible to properly determine the adequacy of his representation of the client. If we accorded, as would the Third Circuit, a presumption of regularity to the conduct of Garland's attorney, we would be closing all avenues of appeal to the petitioner. It is more probable and more fair to presume that fifteen to twenty minutes' preparation time resulted in ineffective performance of counsel.

Reversed.