William **PRAYLOW**, Appellant,

v.

George N. **MARTIN**; Attorney General of the State of South Carolina, Appellees.

No. 84–6450.

United States Court of Appeals, Fourth Circuit.

Argued March 7, 1985.

Decided May 8, 1985.

John H. Hare, Asst. Federal Public Defender, Columbia, S.C., for appellant.

Frank L. Valenta, Jr., Asst. Atty. Gen., Columbia, S.C. (T. Travis Medlock, Atty. Gen., Donald J. Zelenka, Deputy Atty. Gen., Columbia, S.C., on brief), for appellees.

Before RUSSELL, WIDENER and HALL, Circuit Judges.

K.K. HALL, Circuit Judge:

William Praylow appeals from an order of the district court, dismissing his petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. We affirm.

I.

Praylow was indicted twice during the April, 1980, term of the Court of General Sessions for Jasper County, South Carolina, on charges of assault and battery with intent to kill. The record reveals that he was on parole for a Pennsylvania murder conviction when these two charges were filed. The first charge arose out of an incident on October 11, 1979, when Praylow shot his cousin, Elliott Bowers, for refusing to fix his breakfast. Praylow was arrested and kept in jail while his appointed attorney, Jay Gouldon, negotiated an agreement to dismiss the charges if his client would leave South Carolina and return to Pennsylvania. On April 11, 1980, Praylow was released from jail. He went to his father's home to obtain money for the trip back to Pennsylvania. An altercation ensued between Praylow and his father, resulting in the father's hospitalization and Praylow's arrest on charges of assault and battery with intent to kill.

█ Following the incident with Praylow's father, the Jasper County police refused to honor the agreement in the Bowers' case, and Praylow was indicted on April 21, 1980, for assaulting both Bowers and his father. On April 22, 1980, Gary Brown was appointed to represent Praylow on the indictment involving Praylow's father.[1] Brown had first talked with his client in October, 1979, concerning the Bowers' case; however, Praylow did not retain Brown, and Gouldon was appointed

---

1. The State relies upon a statement made by Brown during argument to the court at Praylow's guilty plea proceeding and asserts that Brown was appointed one day earlier on April 21, 1980. This unsworn statement, however, is in conflict with the subsequent testimony of both Praylow and Brown at the state post-conviction relief hearing and the conclusion of both the magistrate and the district court who heard Praylow's case. Although we do not see that whether Brown was appointed on April 21 or 22, 1980, changes our disposition of this case, the State did not object to the magistrate's finding that Brown was appointed on April 22, 1980. Therefore, we conclude that the State is precluded from arguing this point on appeal under *United States v. Schronce,* 727 F.2d 91 (4th Cir.), *cert. denied,* — U.S. —, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984).

to represent him on that charge. Attorneys Brown and Gouldon worked jointly on the two cases.

On April 22, 1980, the day after he was indicted and the same day Brown was appointed, Praylow's case was called for trial, and the court began to draw a jury to try the case. Instead of going to trial, however, Praylow elected to plead guilty to reduced charges of assault and battery of a high and aggravated nature with a recommendation of concurrent sentences. He stated he understood he had a right to a jury trial, but said he wanted to plead guilty and was doing so freely and voluntarily. He further stated he understood that assault and battery of a high and aggravated nature carried a maximum penalty of ten years' imprisonment. He also stated he understood that the judge was not bound by the State's recommendation of concurrent sentences. He acknowledged he was in fact guilty. The court then accepted Praylow's plea of guilty to two charges of assault and battery of a high and aggravated nature.

After hearing the Jasper County Sheriff's version of the facts, the trial judge rejected the recommendation of concurrent sentences and gave Praylow five minutes to decide whether to withdraw his guilty plea. Thereafter, Gouldon, Brown, and Praylow discussed their options. Brown explained to Praylow that the trial judge would accept guilty pleas to the reduced charges of assault and battery of a high and aggravated nature with a possible ten-year maximum sentence on each indictment, or he could stand trial on the original indictments. Praylow chose to go forward with his guilty plea without any recommendation on the sentence he would receive.

The court accepted the plea and then heard argument on mitigation. Brown argued that his client had acted in self-defense. He maintained that Praylow hit his father only after his father had stabbed him with a knife. The trial judge then offered to allow Brown to subpoena the father and sister as witnesses. Praylow, however, said he wished to go ahead with his plea. He was sentenced to confinement for two ten-year periods on each indictment to run consecutively. Praylow did not appeal this sentence.

On May 19, 1980, Praylow filed an application for post-conviction relief in state court. He alleged ineffective assistance of counsel and challenged the voluntariness of his guilty plea. An evidentiary hearing was held on April 27, 1981, at which Praylow and Brown each testified. In addition, Gouldon was deposed, and his deposition was submitted to the court for consideration.

On August 25, 1981, the state court denied Praylow's application. Regarding ineffective assistance of counsel, the state court noted that two attorneys were appointed to represent Praylow, one on each indicted matter, and found that both attorneys conducted an adequate investigation into the facts of each charge, which included speaking with the investigating officers, and reviewing all pertinent information from the Solicitor's file. The state judge further found that Praylow's attorneys met with him on numerous occasions and discussed the facts of his case, the applicable law, his right to a jury trial, and the possible defenses that could be raised. The state court also found that the attorneys informed Praylow of the charges against him, the charges he would be pleading guilty to, and of the plea negotiations conducted by the attorneys for both sides. Additionally, the state court found that Praylow was also informed of the maximum possible sentences he could receive following his pleas of guilty. The state court concluded that the attorneys, both prior to and during the pleas of guilty, performed well within the standards of competence demanded by attorneys in criminal matters.

As to Praylow's allegation that his pleas were not voluntarily and intelligently entered, the state court specifically found that both prior to and during his guilty plea Praylow was informed of and understood the charges against him, the charges to which he would be pleading guilty, and the

maximum possible penalties that he could receive following his pleas of guilty. The state court further found that the trial court's questioning of Praylow was thorough and that there was a factual basis for the acceptance of his pleas. The state court finally concluded that the plea could not be set aside as involuntary solely because the trial court did not accept the Solicitor's recommendation in the case. Praylow did not appeal the denial of his post-conviction relief application.

On November 23, 1982, Praylow filed this petition for a writ of habeas corpus under 28 U.S.C. § 2254 in federal district court. He subsequently filed an amended petition, alleging (1) that he was denied effective assistance of counsel because Brown was not appointed to represent him until the day he entered his guilty plea and (2) that his guilty pleas were not voluntary and intelligent.

The district court referred the matter to a magistrate pursuant to 28 U.S.C. § 636(b). On June 6, 1984, the magistrate upheld the validity of the guilty plea relating to the assault of Bowers but recommended that a writ of habeas corpus be issued setting aside the guilty plea to the charges of aggravated assault on the father, based upon Praylow's allegation that he was denied effective assistance of counsel. The magistrate found that Brown was appointed on the same day Praylow pleaded guilty. Citing *United States v. Cronic,* — U.S. —, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), the magistrate concluded that under these circumstances "[t]he possibility that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the specific elements of representation."

Both Praylow and the State filed objections to the magistrate's report, and on July 12, 1984, the district court dismissed the entire application for habeas corpus relief. The district court noted that Brown took full advantage of Gouldon's knowledge of Praylow and of the charges involved. The court reasoned that Brown was familiar with the circumstances of the first charge and relied upon the fact that the two guilty pleas were negotiated together. The district court further concluded that "there was nothing to prevent [Praylow] from asserting a very straightforward defense had he chosen to do so."

Praylow noted this appeal, and the district court granted his motion for a certificate of probable cause to appeal.

## II.

■ On appeal, Praylow contends that considering all of the circumstances surrounding his guilty plea to the second charge of aggravated assault and battery, including appointment of counsel on the same day that he entered his guilty plea, he was denied effective assistance of counsel in light of *United States v. Cronic,* — U.S. —, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). He further contends that, assuming he was not denied effective assistance of counsel, the district court erred in not granting him an evidentiary hearing on his claim that Brown's failure to interview his father and sister or otherwise investigate the charge against him constituted ineffective assistance of counsel. Finally, Praylow contends that his guilty pleas to both charges were not voluntary and intelligent. We disagree.[2]

In *Cronic,* the Supreme Court rejected the Tenth Circuit's inferential approach to reviewing claims of ineffective assistance of counsel. Without inquiring into the actual performance of the trial attorney, the Tenth Circuit had based its finding of ineffective assistance of counsel on the circumstances surrounding the representation,

---

**2.** Although petitioner has failed to exhaust his state remedies, respondents stipulated that Praylow had exhausted all of the state remedies available to him and, thereby, waived their right to object to the habeas corpus petition on that ground. It is, therefore, appropriate for us to consider this appeal on its merits. *Sweezy v. Garrison,* 694 F.2d 331 (4th Cir.1982), *cert. denied,* 461 U.S. 908, 103 S.Ct. 1882, 76 L.Ed.2d 812 (1983), *Jenkins v. Fitzberger,* 440 F.2d 1188 (4th Cir.1971).

particularly the following five factors: (1) the time afforded for investigation and preparation; (2) the experience of counsel; (3) the gravity of the charge; (4) the complexity of possible defenses; and (5) the accessibility of witnesses to counsel. 104 S.Ct. at 2043, 2049. Although the Supreme Court agreed that these five factors were relevant in evaluating an attorney's effectiveness, it held that some showing of actual prejudice or "breakdown in the adversarial process" was required. *Id.* 104 S.Ct. at 2046.

■ The Court also stated that there are "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *Id.* 104 S.Ct. at 2047. As examples that would justify a conclusive presumption of ineffective counsel, the Court cited the complete absence of counsel and a situation as in *Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932), where out-of-state counsel was appointed in a complex, highly emotional, death penalty case. *Id.* Those examples are not this case. Furthermore, nowhere does the Supreme Court suggest that late appointment of counsel justifies a presumption of ineffective assistance of counsel. We conclude that the appointment of counsel on the same day that Praylow pleaded guilty does not give rise to a presumption of ineffective assistance of counsel[3] and that some showing of actual prejudice is required. We further hold that on the facts of this case Praylow has failed to show any prejudice.

■ After Praylow pleaded guilty, the trial judge told him he would not adopt the State's recommendation of concurrent sentences and gave him an opportunity to withdraw his plea. Praylow, however, wanted to plead guilty. The judge offered to grant a continuance so his father and sister could be subpoenaed as witnesses, but Praylow insisted on pleading guilty. He cannot now be heard to claim prejudice due to ineffective assistance of counsel after he chose to go forward with his guilty plea.

■ We also conclude, that the district court was correct in not ordering an evidentiary hearing. Although given an opportunity at the guilty plea proceeding to subpoena his father and sister, Praylow did not want them brought to court. He again had the opportunity to substantiate the validity of his self-defense claim at his post-conviction relief hearing, but he did not subpoena his father and sister to testify at that hearing. We conclude he may not present such evidence now.

■ As for Praylow's third contention that his guilty pleas were not voluntary and intelligent, we reject it as being meritless. The transcript of the plea proceeding reflects that Praylow admitted his guilt to the trial judge and further stated he was pleading freely and voluntarily. At his state post-conviction relief hearing, he acknowledged that his attorneys had explained the offenses to him and again stated he had pleaded guilty freely and voluntarily. Both attorneys testified that Praylow understood the charges. The record supports the findings by the state judge, federal magistrate, and federal district judge that Praylow pleaded guilty to both charges of assault and battery of a high and aggravated nature knowingly and voluntarily. We will not disturb those findings on appeal.

**3.** Praylow's reliance on *Garland v. Cox,* 472 F.2d 875 (4th Cir.1973), *cert. denied,* 414 U.S. 908, 94 S.Ct. 217, 38 L.Ed.2d 146 (1973), and *Fields v. Peyton,* 375 F.2d 624 (4th Cir.1967), for the proposition that the State had the burden of proving that Praylow was not prejudiced by late appointment of counsel, is misplaced. The presumption of ineffective assistance set forth in *Garland* and *Fields* is a procedural device that disappears as soon as any contradictory evidence is presented. *Garland,* 472 F.2d at 879.

Here, the contradictory evidence was presented in state court in 1981 on Praylow's application for post-conviction relief.

Moreover, in *Strickland v. Washington,* —— U.S. ——, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the companion case to *Cronic,* the Supreme Court established a presumption of effective assistance of counsel and placed the burden of persuasion on the petitioner to show a constitutional violation. We, therefore, conclude that *Garland* and *Fields* are no longer good law.

### III.

Based on the foregoing, the judgment below is affirmed.

AFFIRMED.